## Haggin *vs* Haggin.

ERROR TO THE FAYETTE CIRCUIT.

*Jurisdiction.   Trusts and trustees.   Partition.   Costs.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

<div style="float:right">

CHANCERY

*Case* 106.

*May* 6.

The case stated.

</div>

SOME time prior to the year 1815, *John Haggin*, claiming as a grantee of the Commonwealth of Virginia, 400 acres of land in *Fayette* county, obtained a judgment in ejectment against one *Orsborne*, who had settled thereon under a grant to one *Shannon*. That judgment was enjoined, but the injunction was finally dissolved; and the demise, as laid in the declaration in ejectment, having expired before the dissolution of the injunction, the possession was still withheld from *Haggin*, who, shortly afterwards, to-wit: in the year 1815, took possession of a part of the land, by his son and agent, Samuel Haggin, against whom one *Christian*, also claiming or pretending to hold under *Shannon*, obtained a judgment of restitution, to some indefinite extent, on a warrant for a forcible entry; which judgment was enjoined by *John Haggin;* but that injunction also was dissolved, and shortly afterwards, in June, 1822, *Christian* agreed with *James Haggin*, another son of the said *John*, to sell and surrender his possession for $300, which being paid by the said *Samuel*, *Christian* relinquished and surrendered to him, by a formal conveyance, acknowledged and recorded in the year 1823.

In the mean time other occupants, claiming adversely to *John Haggin*, had surrendered to the said *Samuel*, as his agent, under compromises, the price of which was, as may be inferred, paid by the said *John*, who, in May, 1822, published his last will, in which, among other things, he devised to the said *Samuel* 100 acres of the said land, by a general designation of boundary, including, as we presume, his actual residence, and also 20 acres of woodland, to be laid off in convenient form, and to his daughter, *Nancy*, the residue of his tract, as claimed under his patent. By a codicil, published in

November, 1822, the testator directed that, if, after allotting 120 acres to *Samuel*, there should remain more than 150 acres, the surplus should be sold and the proceeds distributed among certain residuary devisees.

*John Haggin* having died in the year 1825, *Samuel* refused to make partition, and claimed the whole of the land as his own, independently of the will.

In 1826 this suit in chancery was instituted by Nancy Haggin, for enforcing the will and obtaining partition among the devisees of the land, and also for rents.

Decree of the
Circuit Court.

All proper parties having been brought before the Court, a final decree for partition and for rents was rendered in 1841, whereby 120 acres, according to the will, were allotted to *Samuel*, 150 acres to *Nancy*, and a residual portion of 50 acres to the use of the other devisees, and *Samuel* was required to pay to *Nancy* $2730, and to the residuary devisees $541 71, for the use, ever since the testator's death, of the lands allotted to them respectively.

*Samuel Haggin* now seeks the reversal of that decree on various grounds: 1, an alledged want of jurisdiction; 2, because, as argued, he is entitled to more than 120 acres; 3, exorbitance in the decree for rents; and, 4, the omission by the Court to direct an assessment of the value of ameliorations.

These general objections to the decree will be briefly considered in their numerical order.

The Chancellor
has jurisdiction
to decree partition between devisees of parts of an entire tract of land, though their titles may be *legal*.

1. The fact that the titles are legal and that *Samuel* *claims* the whole of the land without showing such a semblance of right thereto as would authorize serious doubt as to its validity, and, therefore, might deserve a trial in a different *forum*, cannot oust a court of equity of concurrent jurisdiction to make partition. There is, in fact, no question of legal title deserving grave consideration. *Samuel's* tenancy during his father's life operates as an estoppel; and besides, he has not shown that, had there been no such estoppel, he had acquired, otherwise than under the will, any available right to any portion of the land. There is no proof even that *Christian* had any title to any part of the land.

But moreover, as it is evident that *Samuel* entered and held, during his father's life, under his title and in trust for him, that fiducial relation and tenure alone would be sufficient to give undoubted jurisdiction to a court of equity to compel restitution and partition according to his father's will.

2. As already suggested, there is no proof that *Samuel* had ever acquired or should be permitted to claim any title adverse to that of his father. *Christian's* relinquishment is not shown to have transferred any thing but possession; and there is no proof as to its extent; nor is there any intimation or other ground for presuming that it was not altogether within the boundary of the 120 acres as devised and allotted to *Samuel* himself.

The will evidently intended to devise to *Nancy* and the residuary devisees, all the land which could be held within the testator's patent, after deducting the portion of 120 acres devised to *Samuel*. And it is intrinsically probable that when the will was first published, the testator did not consider *Christian's* possession as available or even formidable as an adversary right. But, before the republication by the codicil, the testator knew that his son and attorney, *James*, had bought *Christian's* interest, whatever it was; and nevertheless, he still seems to have intended only 120 acres for *Samuel*, and all the residue held under his patent, for *Nancy* and the residuary devisees, restricting her, for the first time, to 150 acres. There could be no ground for any other deduction, unless there had been cause for presuming that *Christian's* claim was superior to the title of the testator, or was so considered by him—and there is certainly no such proof, nor any ground for such presumption. Moreover, if he had intended not to embrace in his will the land claimed by *Christian*, he would not probably have supposed that even as much as 150 acres would have remained for *Nancy*, after deducting 120 acres devised to *Samuel* and also so much in addition thereto as *Christian* claimed or held.

We do not doubt, therefore, that *Samuel's* only available or plausible title is that of devisee to the extent of 120 acres.

HAGGIN
*vs*
HAGGIN.

The Chancellor has jurisdiction to compel restitution of an estate held in trust to the devisees of the *cestui que trust*.

A trustee having paid a sum of money for the possession of one who held a possession of part of the land held in trust, afterwards becoming devisee of part of the land, shall not be allowed to claim any thing as against the devisees of the vendor, without showing that the possession, thus purchased, extended beyond the part devised to himself.

HAGGIN
*vs*
HAGGIN.

Nor has he ever shown that he is entitled to restitution of the $300 paid by him to *Christian,* because it neither appears that he obtained from *Christian* any thing more than his possession, nor that that possession was elsewhere than within the limits of the 120 devised to himself. And moreover, there is reason for inferring that the testator contemplated the payment to *Christian* as enuring to the security and consideration of the devise of 120 acres.

A trustee having the possession of an entire tract of land, and being made devisee of part thereof, is liable to the other devisees for the use and occupation of the residue not devised to him, and cannot curtail his equitable responsibility to the period of five years before decree by protracting a litigation therefor 17 years, which was commenced within one year after the rights accrued.

3. Holding the land, as *Samuel* has done, under an implied trust, though in fact *in invitum,* he is certainly liable in this suit for the value of the use of so much as did not belong to him. And by protracting, for 17 years, the litigation, commenced only about one year after the cause of suit accrued, he cannot curtail his equitable responsibility for rents, (to be decreed in the same suit) within the limits of five years immediately preceding the decree, or within a shorter period than that which has elapsed since the will took effect, by his father's death, and during all which time he has enjoyed, and wrongfully withheld the whole profits.

Nor can we say certainly, that upon the proofs exhibited as to the value of the use, the decree for rents is unreasonable or unjust. The Circuit Court seems to have adopted the minimum estimate, and that is $2 an acre for the arable and 35 cents for the woodland. And the facts, as proved, do not clearly show that the annual value was less, even to Samuel himself. But, having occupied the land successively for many years, occasional repairs and improvements may be presumed to have been intermediately made by him; and this consideration seems not to have been regarded or noticed by the witnesses in their estimate of the profits, and who all appear, moreover, to have looked to the annual value for each single year, rather than to the aggregate for a long term of years, subject to all incidental deterioration and expense. We should doubt, therefore, whether the estimate of the rents may not be rather higher than, under all the circumstances, it should be.

Trustee should be allowed for

But it does seem to us that the interlocutory decree ought to have directed an inquiry and report, as to ameli-

orations which may have been added by *S. Haggin*, and to be deducted from the rents. It does not very clearly appear that there are such ameliorations; though it may be reasonably inferred from the testimony, that, to some extent, there may be; and consequently, as the commissioner appointed to ascertain rents and waste, was not directed or even authorized to inquire also as to ameliorations; and as, moreover, the inquiry and report as to the rents, have not been precisely such as they ought to have been, to assure justice and give perfect satisfaction to the Court, the decree, as to rents, is reversed, and the cause, as to that matter, remanded for another inquiry and report, as to rents, waste, and ameliorations, according to this opinion. But the decree, as to the partition and restitution of possession is affirmed; and there being a reversal and an affirmance in favor of each party, there will be no decree in this Court for costs to either of them.

*Robinson & Johnson* for plaintiff; *S. Daviess* and *Owsley & Goodloe* for defendant.

amelioration on lands held in trust, of which he was not subsequently the devisee, but others.</div>